UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Richard Anderson,<br>Bryan Bashin, et al.,<br><br>Plaintiffs<br><br>v.<br><br>Margaret Spellings, Secretary,<br>U.S. Department of Education,<br>Defendant. | Civil Action No. 06-1565 (RMC)<br><br><br>Date: February 26, 2007 |

**PLAINTIFFS' SUPPLEMENTAL STATEMENT OF THE CASE**

Pursuant to the instructions in the <u>Order for Initial Scheduling Conference</u>, Plaintiffs Richard Anderson, Bryan Bashin, Joseph Cordova, Loerance Deaver, Jr., Michael Evans, Joseph Farrell, Marian Fuller, Martha Garber, Diana Koreski, Seymour Levy, Charles Linster, Jeffrey Mitchell, John Nelson, Kathleen Niemi, Noel Nightingale, Ralph Pacinelli, Bruce Rose, Janette Shell and Jacqueline Tellier, through counsel, hereby submit this supplemental statement of the case, identifying all claims and providing the statutory bases therefor. This <u>Statement</u> is timely filed before 10:30 a.m. on February 27, 2007, that is, more than 72 hours prior to the Initial Scheduling Conference set for March 2.

**I.   STATEMENT OF THE CASE**

Plaintiffs were formerly employed in eight of the ten regional offices of the Rehabilitation Services Administration ["RSA"], a component of the Office of Special Education and Rehabilitative Services [OSERS"], U.S. Department of Education ["ED"].

RSA was created by Congress in the Rehabilitation Act of 1973, as amended, 29 U.S.C. §700 et seq., to enforce the Act "by assisting the States in operating statewide, comprehensive, coordinated, effective, efficient and accountable programs of vocational rehabilitation, each of which is . . . designed to assess, plan, develop and provide vocational rehabilitation services for individuals with disabilities, consistent with their strengths, resources, priorities, concerns, abilities, capabilities, interests and informed choice, so that such individuals may prepare for and engage in gainful employment." See 29 U.S.C. §720(a)(2). According to the functional statement for the regional offices of the RSA ["ROs"] on ED's website in March 2005, the ROs established regional program goals, objectives and priorities; exercised approval authority for state VR plans; possessed approval/disapproval authority for selected discretionary grant programs; served as a focus in each region for consideration of issues impacting individuals with disabilities; and served as advocates for the rights of individual with disabilities. The ROs provided leadership, technical assistance, consultation, monitoring and evaluation services and coordinated RSA and other resources used in providing services to eligible individuals with disabilities through state-federal administered formula grant programs and through grantees receiving discretionary project funds under the Rehabilitation Act and other federal VR statutes.

Plaintiffs Bashin, Cordova, Deaver, Mitchell, Nightingale and Pacinelli served as GS-15 Regional Commissioners or GS-14 Assistant Regional Commissioners with responsibility for supervising one or more of the regional offices. Plaintiffs Anderson, Evans, Farrell, Fuller, Garber, Koreski, Linster, Nelson, Rose, Shell and Tellier were employed as GS-11, -12 or -13 Regional Vocational Rehabilitation Program Specialists, with responsibility for monitoring and providing technical assistance to one or more State Vocational Rehabilitation agencies within the

regions to which they were assigned. Plaintiff Levy was employed as a GS-13 Financial Management Specialist in the Chicago regional office, with responsibility for fiscal monitoring and audit resolution activities of state VR grantees. Plaintiff Niemi was employed as a GS-12 Management and Program Analyst in the Chicago office, with responsibility for analyzing RSA and state grantee programs and advising both about how to improve program management and effectiveness.

In 2005, each of the plaintiffs was forty years of age or older. Plaintiffs Anderson, Bashin, Cordova, Evans, Farrell, Garber, Linster, Nelson, Nightingale, Rose, Shell and Tellier are disabled within the meaning of the Rehabilitation Act of 1973, as amended, and several required reasonable accommodation from the agency in order to perform their jobs.

In early 2005, Plaintiffs learned that OSERS was planning to close the RSA regional offices and move the work then performed in the regional offices to the RSA central office ["CO"] in Washington, D.C. Though all of the work uniquely performed in the regional offices would be moving to the central office, agency management denied that this transition would constitute a "transfer of function" within the meaning of 5 U.S.C. §3503. The agency's refusal to admit that a statutory "transfer of function" was taking place meant that the regional employees would be denied the right to transfer non-competitively to the RSA CO at agency expense. See 5 U.S.C. § 3503. In the absence of a transfer of function, they would be subject to termination via a reduction in force ["RIF"] and, if they wished to remain employed by the agency, would have to compete for the few new positions created in the CO as a result of the *de facto* transfer of function.

Plaintiffs Bashin, Cordova, Deaver, Mitchell, Nightingale, and Pacinelli, the regional

3

commissioners and assistant regional commissioners for regions III - X ["the regional commissioners"], wrote to the Secretary, the Assistant Secretary for OSERS, and the RSA Commissioner several times to protest the planned closure of the regional offices and expressly noted the harmful impact that such action would have on the older and disproportionately disabled workforce in the regional offices.  They also expressed grave concern about the inevitable damage to the RSA's ability to enforce the Rehabilitation Act due to the loss of experienced and knowledgeable personnel and the loss of direct contact with the state VR agencies whom the VR Program Specialists served.  The regional commissioners also initiated a consolidated complaint of employment discrimination under the federal sector EEO process outlined in 29 C.F.R. Part 1614.  They alleged that the closure of the regional offices and the resulting termination of the regional employees were motivated by disability based on age and animus against the high percentage of disabled persons who were employed in the regional offices.  They also alleged that, intentional discrimination aside, the closures and terminations would disproportionately impact older and disabled workers compared to the way the CO work force, which was younger and less disabled, was not subject to any job losses.

  Agency management left the regional employees in suspense for several months about how the RIF would be handled.  Finally, in late May 2005, agency management notified the regional employees that they would have only a brief period in which to opt to take an early retirement incentives or face being RIF'd, and insinuated that there would be very few positions created at headquarters, despite the fact that all of the work performed in the ten regional offices was being transferred there.  Agency management did not identify how many and what vacancies would be created until June 27, 2005, five days before the end of the brief window in which

regional employees had to choose between taking early retirement and the RIF.

In June 2005, Plaintiffs Anderson, Evans, Farrell, Fuller, Garber, Koreski, Levy, Linster, Nelson, Niemi, Rose, Shell and Tellier retained counsel and initiated EEO complaints. Like the regional commissioners, they alleged that discrimination based on age and disability were the motivation for the closure of the regional offices and elimination of their jobs, and that the pending agency actions would disproportionately harm older and disabled workers.

On or before July 2, 2005, Plaintiffs Koreski, Linster, Mitchell and Niemi retired to avoid the impending RIF. Plaintiff Mitchell nevertheless applied with Plaintiffs Bashin, Cordova, Deaver, Fuller, Garber, Nightingale and Pacinelli under vacancy announcements OSERS-2005-0019 and OSERS-2005-0018 for new supervisory position(s) at RSA CO.

Plaintiffs Anderson, Evans, Farrell, Fuller, Garber, Nelson, Shell and Tellier applied for positions under vacancy announcement OSERS-2005-0016 for new non-supervisory positions as VR program specialists at RSA CO. Plaintiffs Levy and Shell also applied for new positions as GS-13 Financial management specialists under vacancy announcement OSERS-2005-0024.

Plaintiff Rose was foreclosed from applying for any of the advertised vacancies at RSA CO because he was a GS-11 at the time he was terminated. He thus lacked the requisite time-in-grade (one year as a GS-12) to apply for any of the advertised positions, which were all graded GS-13 or above. Ms. Niemi, who had taken early retirement, could not have applied for a position at RSA CO for the same reason: she was a GS-12 and lacked the requisite time-in-grade as a GS-13 to apply for the only Program and Management Analyst positions offered, which were at the GS-14 and -14/15 levels.

In early September 2005, Plaintiffs Levy and Shell were offered positions as financial

5

management specialists. They were notified that they would be required to relocate to Washington, DC if they accepted the positions in the newly created fiscal unit in the CO.

On September 20, 2005, Plaintiffs jointly filed an application in federal court for an injunction restraining the agency from terminating them pursuant to the noticed RIF.

On September 23, 2005, the agency made job offers to Plaintiffs Anderson, Evans, Farrell, Fuller, Garber, Nelson, Shell and Tellier. On September 27, Ms. Nightingale received an offer. The jobs offered would require Plaintiffs to relocate to the Washington, DC area. Plaintiffs who received job offers were told they would receive the mandatory household moving allowance; however, because only a few days remained before the RIF under which each of these employees was subject to termination, they would have one weekend in which to complete the house-hunting trip to which government employees are entitled when relocating. Furthermore, they would not receive home repurchase assistance. Finally, they would not receive a relocation bonus or retention bonus. Plaintiffs were required to accept or reject the job offers before 4 p.m. on September 28.

Oral arguments on the application for an injunction were presented at a hearing on September 28, 2005. The application was denied before noon on that date.

Plaintiff Levy, who is not disabled, accepted the position of fiscal specialist, and was allowed to telecommute from his home in Chicago, Illinois. Meanwhile, Plaintiffs Evans, Farrell, Garber, Nelson, Nightingale and Tellier, who are disabled, requested that the agency provide them with the reasonable accommodation of allowing them to work at least part time from their homes in the regions. With one exception, the agency flatly refused to accommodate these requests, or to allow the Plaintiffs to accept positions on the condition that the

6

accommodations would be granted. Plaintiff Fuller retired effective midnight September 30, 2005. Plaintiffs Farrell, Garber, Nelson and Tellier were terminated pursuant to the RIF. Plaintiff Shell accepted the job offer and relocated to the Washington, DC area after hurriedly selling her home on Lake Michigan at a loss due to the lack of the protection that the home repurchase incentive would have offered.

The agency specifically urged Plaintiff Evans not to retire or reject the job he was offered and indicated it would consider his request for an accommodation. Evans therefore accepted the job offer and remained on administrative leave while his request for reasonable accommodation was considered. When it was rejected, Evans retired effective January 1, 2006, i.e., he was constructively discharged.

Plaintiff Levy telecommuted part-time and to commute between his home in Chicago and the RSA CO in Washington D.C. until January 2006, at which time he retired, finding the post-RIF chaos within RSA and the separation from his family too difficult.

Prior to the RIF, Plaintiffs Anderson, Nightingale and Shell had applied for positions within three regional offices of the ED Office of Civil Rights. Under the ED Career Transition Assistance Plan (CTAP), as employees threatened by a RIF, they should have had hiring priority for positions for which they were qualified. Plaintiff Anderson was early offered a lower-graded position within the OCR office in Region II (New York). He accepted this position and remains employed by the agency. By contrast, Plaintiffs Shell and Nightingale in Regions V (Chicago) and X (Seattle) respectively were denied priority placement for OCR positions for which they were qualified after ED changed its interpretation of the CTAP policy during late September 2005, after the application for injunction was filed. Meanwhile, in Regions VI (Dallas) and VIII

(Denver), Plaintiffs Evans, Garber, and Fuller had been discouraged by the regional HR officer(s) from applying for available OCR positions.

Plaintiffs Bashin, Cordova, Deaver, Mitchell, and Pacinelli were not selected for any of the advertised GS-14 or -15 supervisory positions. Instead, the agency selected David Esquith, a candidate who lacked a GS-15, supervisory experience, and expertise in vocational rehabilitation, for the available GS-15 position. The agency offered Nightingale a GS-14/15 position reporting to Esquith. Cordova, Deaver, Nightingale and Pacinelli were each GS-15 regional commissioners for two RSA regions and are veterans of vocational rehabilitation. Bashin and Mitchell were also VR specialists and were GS-14 assistant regional commissioners with supervisory responsibility for one region. Each of the regional commissioners' objective qualifications for the position were observably superior to Esquith's, and in the absence of discrimination and retaliation, they and not he would have been selected for the available positions.

Plaintiffs Garber, Fuller, and Nelson applied for GS-14 positions prior to the RIF and were not selected, though each is a highly experienced VR specialist. Three of the available GS-14/15 positions went to CO applicants with little experience providing assistance directly to state VR agencies and other grantees.

In October 2005, the agency posted two additional supervisory vacancies (OSERS-2005-46 and OSERS-2006-001) for which Plaintiffs Bashin, Cordova, Deaver, Fuller, Garber, Mitchell, Nelson and Pacinelli were qualified. By waiting until after the RIF to advertise these positions, the agency deprived Plaintiffs of the CTAP hiring priority for these positions to which they would have been entitled if they had applied prior to the RIF.

Plaintiff Nightingale accepted the position she was offered and then subsequently was subjected to retaliatory treatment by the Assistant secretary and her new supervisor which lead her to resign effective November 25, 2005, i.e., she was constructively discharged.

**II.     Claims and Statutory Predicates**

**COUNT 1:** Plaintiffs' positions were eliminated effective September 30, 2005 due to discrimination based on age and/or disability and/or in reprisal for their protected activity, in violation of the Rehabilitation Act, as amended, 29 U.S.C. §700 et seq. and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §633a et seq., thereby causing Plaintiffs pecuniary and non-pecuniary harm.  The agency's actions also disproportionately impacted the workforce in the regional offices on the bases of their average age and the high prevalence of disabled persons, while leaving the younger and relatively non-disabled CO workforce untouched - except for having to perform a host of new and unfamiliar duties inherited from the regional office after their closure and the RIF.

**COUNT 2:** Those Plaintiffs who were competitive-service federal employees effective September 30, 2005 (i.e., all but Bashin), were denied the right, under 5 U.S.C. §3503, to transfer with their functions due to discrimination based on age and/or disability and/or in reprisal in violation of the Rehabilitation Act, the ADEA, and §3503, causing Plaintiffs pecuniary and non-pecuniary harm.

**COUNT 3:** Those Plaintiffs who applied for positions under Vacancy Announcement OSERS-2005-18 were not selected because of their age and/or disability and/or in reprisal for their protected activity, in violation of the Rehabilitation Act and the ADEA, thereby causing

Plaintiffs pecuniary and non-pecuniary harm.

**COUNT 4:** Those Plaintiffs who applied under vacancy announcement OSERS-2005-19 and were not selected were subjected to discrimination based on age and/or disability and/or in reprisal for their protected activity, in violation of the Rehabilitation Act and the ADEA, thereby causing Plaintiffs pecuniary and non-pecuniary harm.

**COUNT 5:** Those Plaintiffs who applied and were selected for positions at headquarters under Vacancy Announcements OSERS-2005-0024 and OSERS-2005-0016 and who were then denied standard relocation benefits because of their age and/or disability and/or in reprisal for their protected activity, in violation of the Rehabilitation Act and the ADEA, thereby causing Plaintiffs pecuniary and non-pecuniary harm.

**COUNT 6:** Those Plaintiffs who were selected for positions at headquarters and who were then denied reasonable accommodation, harassed or otherwise retaliated against were constructively discharged due to their age and/or disability and/or in reprisal for their protected activity, in violation of the Rehabilitation Act and the ADEA, thereby causing Plaintiffs pecuniary and non-pecuniary harm.

**COUNT 7:** Those Plaintiffs who applied for positions within the agency's regional OCR offices but were denied priority placement due to the agency's alteration of its CTAP policy, were subjected to discrimination based on their age and/or disability and/or in reprisal for their protected activity, in violation of the Rehabilitation Act and the ADEA, thereby causing Plaintiffs pecuniary and non-pecuniary harm.

**COUNT 8:** Those Plaintiffs who were deprived of CTAP priority for positions at agency headquarters due to the agency's failure to announce Vacancy Nos. OSERS-2005-46 or OSERS-

2006-01 before the RIF took effect were subjected to discrimination due to their age and/or disability and/or in reprisal for their protected activity, in violation of the Rehabilitation Act and the ADEA, thereby causing Plaintiffs pecuniary and non-pecuniary harm.

                                      Respectfully submitted,

                                      /s/ Heather G. White
                                 George M. Chuzi, Esq. (D.C. Bar 336503)
                                 Heather G. White (D.C. Bar 497159)
                                 Kalijarvi, Chuzi & Newman, PC
                                 1901 L Street, NW, Suite 610
                                 Washington, DC 20036
                                 Tel: (202) 331-9260
                                 Fax: (202) 331-9261

## CERTIFICATE OF SERVICE

I hereby certify that the following persons were served with the foregoing **SUPPLEMENTAL STATEMENT OF THE CASE** on this 26th day of February 2007 by the means specified:

Heather D. Graham-Oliver, Esq.                        **BY CM-ECF**
Assistant United States Attorney
Office of the U.S. Attorney
Judiciary Center Building
555 4th St., NW
Room 10-818
Washington, DC 20530
Tel: 202 305-1334
*Attorney to be Noticed for Defendant*

                                      /s/ Heather G. White
                                     Heather G. White